**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BETH E.-A., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-3670 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Beth E.-A.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 14], denies the Commissioner's motion for summary judgment [dkt. 17], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**I.     BACKGROUND**

**a.   Procedural History**

In July 2012, Plaintiff filed for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 216(i), 223(d), alleging an onset date of disability of February 15, 2013. [Administrative Record ("R.") 61.] Plaintiff's claim was initially denied August 23, 2012 and denied again on reconsideration on February 21, 2013. *Id.* Plaintiff requested an administrative hearing. *Id.* On March 11, 2014 Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Edward P. Studzinski. *Id.* A vocational expert also testified. *Id.* On October 8, 2014 the ALJ

---

[1]     In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

issued an opinion finding Plaintiff not disabled. [R. 61-69.] Plaintiff did not appeal.

Three years later, in February 2017, Plaintiff applied for benefits again, alleging an onset date of disability of October 9, 2014. [R. 180, 183.] Plaintiff's claim was initially denied June 16, 2017 and denied again on reconsideration on August 29, 2017. [R. 100-102, 107-109.] Plaintiff requested an administrative hearing. [R. 110-111.] On June 29, 2018 Plaintiff appeared with counsel and testified at a hearing before ALJ Diane S. Davis. [R. 30-57.] Vocational Expert Kenneth Jones also testified. [R. 47-56, 268,69.] On October 31, 2018 ALJ Davis issued an opinion finding Plaintiff not disabled. [R. 13-20.] Plaintiff appealed that decision to this Court. The Court issued an August 24, 2020 remand order, faulting the ALJ for improperly addressing the opinions of Plaintiff's treating physicians. [R. 733-45.]

Upon remand, the Commissioner assigned Plaintiff's case to a third ALJ, Janet Akers.[2] ALJ Akers held another administrative hearing on March 17, 2021. [R. 643-706.] A different Vocational Expert, Gary Wilhelm, testified at that hearing. [R. 666-99.] On March 31, 2021, ALJ Akers issued an opinion finding Plaintiff not disabled. [R. 621-34.] Before the Court now is Plaintiff's appeal of this March 31, 2021 decision.

b. **Relevant Medical Background**

Plaintiff was born in April of 1964 and was 50 years old on her alleged disability onset date. [R. 33.] Plaintiff earned her bachelor of science in nursing and worked as a RN Care Manager at Christ Hospital. *Id.* Plaintiff stopped working in February 2012 after her third back surgery. [R. 34-35.] After the third surgery, Plaintiff participated in a course of physical therapy that eventually plateaued. *Id.* Plaintiff complained of intense pain, and a follow-up MRI showed a slipped disc. *Id.* As a result, Plaintiff underwent a fourth surgery on July 27, 2012 where a cage was used to stabilize the fusion. [R. 35, 298.] A follow-up MRI in November 2012 showed a mild grade 1 anterior spondylolisthesis L4-L5. [R. 452.]

---

[2]    There is no SSA policy dictating that subsequent cases be assigned to the same ALJ as was familiar with and decided the case prior, although the SSA does try for consistency in this regard upon remand. *See* HALLEX I-2-1-55, setting forth the SSA's internal guidelines for Assignment of Service Area Cases to Administrative Law Judges.

The MRI also showed improvement — the focal central disc protrusion at L3-L4 was no longer identified. *Id.* However, CT scans that day showed lucency suspected surrounding the L4-L5 fusion screws which may reflect loosening. [R. 454.]

Plaintiff also complained of left knee pain. [R. 456.] An MRI taken on December 5, 2012 showed a medial meniscal tear. [R. 449.] In January of 2013 Plaintiff participated in physical therapy as she tried to wean herself off of narcotic medications. [R. 456.] Plaintiff reported that her lower back pain was 7 out of 10 and her left knee pain was 8 out of 10. *Id.* Plaintiff's physical therapist Georgenne Czajkoski, P.T., noted that Plaintiff's range of motion in her left knee was -4 to 132 degrees active, zero to 135 degrees passive. *Id.* Plaintiff reported that her pain was a 4 -7 out of 10 when sitting for longer than thirty minutes. [R. 457.] Plaintiff was able to climb stairs, though only one step at a time. *Id.* Plaintiff's ability to bend and retrieve laundry out of the dryer was 50% better; and her ability to retrieve objects out of the refrigerator was 30 to 40% better. *Id.* Plaintiff was able to perform only light housework, such as dusting, though she reported difficulty reaching overhead. *Id.*

In October 2013, Plaintiff continued follow-up appointments with her back-surgeon Keith L. Schaible, M.D. [R. 319.] On October 15, 2013 Dr. Schaible reviewed Plaintiff's MRI, which showed expected postoperative changes, with the disc above and below the fusion looking fine. *Id.* Plaintiff complained of continued pain restricting her activities and work. *Id.* Dr. Schaible recommended Plaintiff continue her home exercise program. *Id.* Plaintiff continued appointments with Dr. Schaible every four to six weeks. [R. 305-319.] In April 2014, Plaintiff estimated that she was 70 to 85% incapacitated or disabled due to her symptoms. [R. 315.] By July 2014 Dr. Schaible noted that Plaintiff was experiencing pain every day; showed no real changes in her condition or symptoms; and she "remain[ed] unable to return to work, likely never to return back to work with this persistent pain." [R. 313.] By September 2014 Dr. Schaible noted Plaintiff appeared stable and adjusted her pain medication down to one Norco per day. [R. 312.] In April 2015 Plaintiff complained to Dr. Schaible that her back pain worsened when driving certain distances. [R. 308.]

In July 2015 Plaintiff began treatment with a pain specialist Ebby P. Jido, M.D. [R. 327.] Dr. Jido noted Plaintiff's history of lower back pain and right-sided radiculopathy. *Id.* Plaintiff received steroid and facet injections, though they did not benefit her. *Id.* Plaintiff could not take Flexeril, Gabapentin, Baclofen, or nonsteroidal anti-inflammatory drugs due to side effects. *Id.* Plaintiff renewed complaints of left knee pain from the meniscal tear. *Id.* Plaintiff also wore a knee brace. [R. 328.] Dr. Jido opined that Plaintiff suffered from lumbar post-fusion syndrome. *Id.* According to Dr. Jido, Plaintiff was not a suitable candidate for any injections. *Id.* Dr. Jido suggested a spinal cord stimulator or intrathecal pump as possible alternatives for pain management. *Id.* Finally, Dr. Jido prescribed MS Contin 50 mg. and MSIR 15 mg. *Id.* In August 2015 Dr. Jido prescribed Hysingla 30 mg., an extended-release hydrocodone because Plaintiff could not tolerate morphine. [R. 329.] By December 2015 Plaintiff was diagnosed with chronic pain, lumbar radiculopathy, lumbar stenosis, degenerative disc disease, and degenerative joint disease. [R. 336.] At this time Dr. Jido increased Plaintiff's Hysingla to 80 mg. [R. 337.] Plaintiff was not working at this time due to pain. [R. 338.]

On April 13, 2017 Plaintiff underwent examination by consultative examiner Mahrendragouda Patil, M.D. [R. 383-387.] Plaintiff complained of constant moderate pain in her neck, midback, and low back, rated at 7 out of 10. [R. 383.] Plaintiff reported that she had left knee pain since 2012; and that her knee pain was progressively worsening. *Id.* Plaintiff had not opted for left knee surgery due to complications with anesthesia. *Id.* Plaintiff complained of moderate pain and difficulty sitting for more than fifteen minutes, prolonged standing and walking. *Id.* Plaintiff denied gait imbalance. *Id.* Plaintiff had some limited lumbar range of motion in flexion, extension, left and right lateral bending. [R. 385.] Plaintiff's knee flexion was 140 degrees of a possible 150 degrees on the right, and the left knee was limited to 130 degrees. *Id.* Dr. Patil noted Plaintiff had some difficulty walking on heels and walking on toes. *Id.*

That same day, Dr. Patil ordered x-rays of Plaintiff's neck, back, and knee. [R. 388.] The neck x-rays showed an anterior spinal fixator spanning C5-7. *Id.* Anterior osteophytes were noted at C3 and

4

C4, with a loss of cervical lordosis. *Id.* Plaintiff's thoracic x-ray was normal. [R. 389.] The lumbar x-ray noted straightening of the spine, likely due to muscular spasm; as well as marginal anterior osteophytes at L2 and L3; and anterior spinal fixator spanning L4 and L5. [R. 390.] Finally, the left knee x-ray showed periarticular and posterior patellar osteophytes and medial tibio-femoral joint space was reduced. [R. 391.] By May 2017, Plaintiff renewed complaints of moderate pain with functional impairment. [R. 401.] Plaintiff described about 40% pain relief from her pain medications. *Id.* Plaintiff also noted that she was driving more to visit her father who was in rehab for bilateral wound care. *Id.*

In May 2017, Plaintiff underwent examination by consultative examiner Vidya Madala, M.D., who noted severe impairments of degenerative back disorder and osteoarthritis. [R. 79.] Dr. Madala reviewed Dr. Patil's report and the x-rays taken in April 2017. [R. 79, 81.] Dr. Madala determined that Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk a total of six hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. [R. 80-81.] In August 2017 Plaintiff was also examined by consultative examiner Ranga Reddy, M.D., at the reconsideration level. [R. 85-95.] Dr. Reddy also reviewed Dr. Patil's report, as well as records from Advocate Christ Medical Center from 2014 - 2017 and records from the Pain Clinic from April and May 2017. [R. 90.] Dr. Reddy found the same exertional limitations for lifting, carrying, sitting, standing, and walking.[3] [R. 92.] Both Dr. Madala and Dr. Reddy noted that Plaintiff was only able to walk one block, though both found this limitation to be inconsistent with other findings. [R. 80, 91.] Neither Dr. Madala nor Dr. Reddy mentioned the notes from Dr. Schaible. [R. 75-83, 85-95.]

As of July 2017, Plaintiff transitioned her pain management to Neil Malhotra, M.D., due to insurance issues. [R. 563-566.] Dr. Malhotra noted that Plaintiff suffered from lower back pain radiating right more than the left, posteriorly to the knee and ankle at times. [R. 563.] Plaintiff's pains were

---

[3] Dr. Madala offered a more-restrictive limitation to occasional balancing; and Dr. Reddy included a restriction of no climbing ladders, ropes, or scaffolds. [R. 16-17, 81, 92.]

associated with numbness and tingling of her lower extremities. *Id.* Plaintiff reported her pain at 7 out of 10. *Id.* During the examination, Plaintiff's gait and posture were normal. [R. 564.] The FABER exam was positive on the right; and Plaintiff had decreased lumbar range of motion in flexion and extension. *Id.* Dr. Malhotra diagnosed Plaintiff with spondylosis, radiculopathy in the lumbar region, cervicalgia, and post laminectomy pain syndrome. *Id.* Dr. Malhotra continued Plaintiff on Hysingla 80 mg., Duexis 800 mg., and Lyrica 25 mg., but discussed the risks of chronic opiate therapy. [R. 565.]

A March 9, 2020 MRI of Plaintiff's lumbar spine showed postoperative changes compatible with fusion: mild to moderate spinal canal narrowing at L5-S1; moderate to severe left neural foraminal narrowing at L3-4 with compression of exiting left L3 nerve root; and "correlation for distribution of patient's symptoms [was] suggested." [R. 955-56.] Dr. Malhotra continued Plaintiff's pain medications. [R. 908.]

Plaintiff is 67" tall. [R. 384.] Throughout the relevant time period, Plaintiff was considered obese: in 2014 Plaintiff weighed 223 lbs. [R. 373]; in 2015 she weighed 212 lbs. [R. 542]; in 2016 she weighed 205 lbs. [R. 544]; in 2017 she weighed 198 lbs. [R. 384.]; in 2018 she weighed 205 lbs. [R. 582]; in 2020 she weighed 224 lbs. (BMI 34.12) [R. 1067]; and in 2021 she weighed 226 lbs. (BMI 34.39) [R. 1056].

c. **The ALJ's Decision**

On March 31, 2021, ALJ Akers issued a written decision denying Plaintiff disability benefits. [R. 621-34.] Plaintiff alleged disability beginning on October 9, 2014. [R. 621.] At Step One, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 9, 2014 through her date last insured of December 31, 2017. [R. 624.] At Step Two, the ALJ found that Plaintiff had severe impairments of: degenerative disc disease of the lumbar spine; postlaminectomy syndrome; and meniscal tear, left knee. *Id.* The ALJ found Plaintiff's obesity to be a nonsevere impairment. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* Before Step Four, the ALJ found that Plaintiff

6

had the residual functional capacity ("RFC")[4] to perform light work, with the following additional limitations: occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional exposure to weather; no exposure to unprotected heights, dangerous machinery, and vibration; no assembly line work; and "[s]he could have alternated/changed positions every 30 minutes for one to two minutes while remaining at the workstation and no change in the work process." [R. 624.] At Step Four, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work as a Utilization Review Coordinator (DOT #079.262-010); the ALJ also determined Plaintiff could not return to her past work as Director of Nursing, although the ALJ did not find this to be "prior relevant work." [R. 631-32.] At Step Five, based on the VE's testimony the ALJ made alternative findings of other occupations that existed in significant numbers in the national economy Plaintiff was capable of performing given her age, education, work experience, and RFC. [R. 632-33.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 633-34.]

## II. DISCUSSION

Among other things, Plaintiff complains ALJ Akers erred in her Residual Functional Capacity assessment. The Court agrees.

Residual Functional Capacity is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945. Under Social Security Ruling 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work." SSR 96-8p. Specifically, despite deferential review by the Court, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

In making her RFC determination, ALJ Akers wrote that she "[took] note of the comments that indicate that the claimant's pain is alleviated with gentle movement, allowing her to alternate/change positions every 30 minutes for one to two minutes while remaining at the workstation with no change in the work process." [R. 629.] Therefore, the RFC limited Plaintiff to light work with the limitation, among others, that "[s]he could have alternated/changed positions every 30 minutes for one to two minutes while remaining at the workstation and no change in the work process." [R. 624.] However, the ALJ's discussion is devoid of an adequate explanation for this limitation.

The actual notation (repeated throughout the documents from Advocate Christ Medical Center) in Plaintiff's medical records to which the ALJ cites reads: "[p]atient admits to morning stiffness all over body and joints, but as the day goes on, pain decreases with gentle motions and activities." [R. 336, 340, 344, 433, 440.] This is the extent of the evidence the ALJ discussed when crafting the one-to-two minute alternating/changing positions limitation within the RFC; yet this evidence tells the Court nothing about how the ALJ determined this would be the most Plaintiff could do despite her impairments. 20 C.F.R. §§ 404.1545, 416.945. Plaintiff is correct that a one-to-two minutes twice per hour allowance for repositioning does not necessarily equate to her pain decreasing with gentle motions and activities as the day goes on. Rather, it appears this accommodation was crafted from whole cloth, as it is unsupported by medical evidence or testimony. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 (2d Cir. 2012) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (evidence cannot be substantial if it is 'conjured out of whole cloth.'")). An ALJ cannot ascribe an RFC to a claimant that is unsupported by the medical evidence. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No evidence supports this []conclusion. No physician testified - no medical records revealed - that [the claimant] has the [RFC] ascribed to him by the [ALJ]"); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ cannot make conclusions without evidence). An ALJ also cannot substitute an evidentiary gap with speculation.

8

*See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). The Court agrees with Plaintiff that there is simply no evidence in the record that a one-to-two minute shift in position would allow Plaintiff to return to a standing job. [Dkt. 19, p. 3.]

Because ALJ Akers purports to rely on the Advocate Christ Medical Center pain clinic notes as her basis for this limitation, the limitation seems particularly speculative in light of two other key statements repeated multiple times in the same short section of pain clinic notes. First, the notes reflect some version of "[p]ain interferes with patient's ADLs,[5] personal and social life, house chores, and sleep" [R. 336, 340, 345, 349, 401, 406, 412, 419, 426, 433, 440]. It appears the ALJ impermissibly cherry picked the information from the notes that Plaintiff's pain decreased throughout the day with gentle motions and activities while ignoring that the pain still interferes with *many* aspects of Plaintiff's life. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("ALJs are not permitted to cherrypick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings").

Similarly, the record contains multiple notations both that Plaintiff's "[p]ain increases with standing up movements from seated positions" [R. 344, 349, 355, 400, 405, 412, 419, 426, 433] and that Plaintiff "is unable to stand in one position for more than 10-15 minutes due to pain" [R. 355, 405, 419]. While the RFC is unclear as to whether Plaintiff would be repositioning from a seated or standing position, these notations detail how both would be problematic for Plaintiff.[6] Yet the ALJ also ignored these notations detailing how Plaintiff might have particular trouble with the RFC repositioning limitation, despite these notations being adjacent to the sentence the ALJ relied on to conclude that gentle movement helped to alleviate Plaintiff's pain.

---

5    ADL is shorthand for activities of daily living.

6    The court presumes the RFC refers to a standing position, as it does not reflect any allowance for sitting. Plaintiff is also under the same impression as she references "a standing job" in her reply brief. [Dkt. 19, p. 3.] However, the fact the Court has to speculate to fill in this void is further evidence of the inadequacy of the RFC determination. *Lopez ex rel. Lopez*, 336 F.3d at 539 (Court cannot let decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error).

Simply, the ALJ failed to explain the basis for her "one-to-two minute position change every 30 minutes" limitation in a way that allows the Court to adequately trace the ALJ's path of reasoning from the evidence to her conclusion. The Court remands on this basis.

## III. CONCLUSION

Based on the foregoing, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 14] is granted; the Commissioner's motion for summary judgment [dkt. 17] is denied.

Dated: 9/29/2022

Susan E. Cox,
United States Magistrate Judge